UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                                                    DECISION & ORDER and
                              Plaintiff,                            REPORT & RECOMMENDATION

                    v.                                              06-CR-6011T

DANIEL CARTER,

                              Defendant.

_____


## PRELIMINARY STATEMENT

By Order of Hon. Michael A. Telesca, United States District Judge, dated

February 1, 2006, all pre-trial matters in the above captioned case have been referred to this

Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 9).

Defendant Daniel Carter ("Carter") is charged in a single-count Indictment.  The

Indictment charges that in or about April 2004, Carter conspired to possess with intent to

distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(A).  (Docket # 5).  Currently pending before this Court for a Decision and Order is

Carter's motion for a *Franks* hearing.  Also before the Court for a Report and Recommendation

are Carter's motions to suppress evidence obtained pursuant to a wiretap and to suppress physical

evidence seized as the fruit of that wiretap.  (Docket # 17).[1]  The following constitutes this

Court's Decision and Order and Report and Recommendation.

_____

[1]  Carter's omnibus motions also sought, *inter alia*, a bill of particulars and disclosure of confidential
informants.  (Docket # 17).  These requests were decided in open court by the undersigned on April 27, 2006.
(Docket ## 21, 22).

**FACTUAL BACKGROUND**

On February 5, 2004, Monroe County Court Judge John Connell issued an

eavesdropping warrant authorizing the interception of telephone communications over cellular

telephone number 585-202-9134, which was believed to be utilized by Carter.  (Docket # 17, Ex.

C).  The wiretap warrant was issued upon the affidavit of Rochester Police Officer David

Simpson.  (Docket # 17, Ex. C ("Simpson Aff.")).  In that affidavit, Simpson affirmed that since

August 2003, he had been conducting an investigation into the narcotics trafficking activities of

Carter and Travaris Meeks, the owner of Mad Flavors Clothing Store.  (Simpson Aff. at ¶ 6).

Among other evidence presented in his affidavit, Simpson described information

and assistance that had been provided to the investigating agents by two confidential informants,

identified as CI-1 and CI-2.  (Simpson Aff. at ¶¶ 15-45).  According to Simpson, the informants

had provided information relating to narcotics trafficking conducted by Meeks and Carter at Mad

Flavors Clothing.  CI-1's information generally pertained to Meeks, while CI-2's information

pertained to both Meeks and Carter, who, according to CI-2, sold cocaine for Meeks as his "right

hand man."  (Simpson Aff. at ¶ 33).  Simpson characterized both informants as reliable, setting

forth the bases for his opinion, namely, that both had previously provided information to law

enforcement agents that the agents had subsequently corroborated.  (Simpson Aff. at ¶¶ 15, 25,

29-30).

In addition, Simpson described three controlled purchases of cocaine made by

CI-2 involving Carter.  On one occasion, CI-2 contacted Carter over the target cellular telephone

and arranged to purchase cocaine; later that day, as arranged, CI-2 purchased approximately 62

grams of cocaine directly from Carter.  (Simpson Aff. at ¶ 37).  On another occasion, CI-2 made

the purchase from an alleged associate of Meeks who, according to CI-2, placed telephone calls to Carter's cellular phone in the course of arranging the transaction.  (Simpson Aff. at ¶¶ 34-35).  In the third transaction, CI-2 purchased cocaine from another associate who was in the back of a vehicle owned by Carter's sister and which Carter had been observed operating on prior occasions.  (Simpson Aff. at ¶ 36).

Following the initial wiretap order, Simpson applied for and received authorization to intercept conversations over other cellular telephone numbers also believed to be utilized by Carter.  (Docket # 27 at 2-3).  Notably, on March 2, 2004, Simpson applied for a wiretap warrant for cellular telephone number 585-503-8023.  In his supporting affidavit, Simpson revealed to the court that CI-2 was "no longer available for this investigation as he/she had violated his/her contract and fled the area."  (Docket # 19, Ex. B at ¶ 33).

Pursuant to the final wiretap order, the interception of communications ceased by April 28, 2004 (Docket # 23 at ¶ 5), and notice of the intercepted communications was mailed on June 18, 2004 to Carter at 1325 North Street, Apartment 4, Rochester, New York.  (Docket # 19, Ex. C).  The criminal complaint initiating this criminal prosecution was filed on October 17, 2005.  (Docket # 1).

## DECISION & ORDER

Carter moves for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), on the grounds that the affidavits offered in support of the wiretap applications contained a material omission.  (Docket # 17).  Specifically, Carter asserts that Officer Simpson failed to inform Judge Connell that CI-2, the individual who had provided information about Carter's

alleged narcotics trafficking, had fled the jurisdiction during the investigation.  According to

Carter, because this information was significant in assessing the credibility of CI-2, its omission

rendered the wiretap affidavit materially misleading.  (Docket # 17).

Under the Supreme Court's holding in *Franks v. Delaware*, "a district court may

not admit evidence seized pursuant to a warrant if the warrant was based on materially false and

misleading information."  *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987) (citing

*Franks v. Delaware*, 438 U.S. at 154), *cert. denied*, 507 U.S. 954 (1993).  To justify a *Franks*

hearing, a defendant challenging an affidavit must make "a substantial preliminary showing that

(1) the affidavit contained false statements made knowingly or intentionally, or with reckless

disregard for the truth; and (2) the challenged statements or omissions were necessary to the

Magistrate's probable cause finding."  *Id.* (citing *Franks*, 438 U.S. at 171-72) (internal quotation

omitted).  A hearing is required if the defendant provides the court with a sufficient basis upon

which to doubt the truth of the affidavit at issue.  As explained by the Supreme Court:

> To mandate an evidentiary hearing, the challenger's attack must be
> more than conclusory and must be supported by more than a mere
> desire to cross-examine.  There must be allegations of deliberate
> falsehood or of reckless disregard for the truth, and those
> allegations must be accompanied by an offer of proof.  They should
> point out specifically the portion of the warrant affidavit that is
> claimed to be false; and they should be accompanied by a
> statement of supporting reasons.  Affidavits or sworn or otherwise
> reliable statements of witnesses should be furnished, or their
> absence satisfactorily explained.  Allegations of negligence or
> innocent mistake are insufficient.

*Franks*, 438 U.S. at 171.

A *Franks* hearing is not required where it is sought merely on the basis of an

allegation that the information in the warrant affidavit subsequently proved to be inaccurate,

4

especially where that information derives from a source independent of the affiant.  *See*, *e.g.*, *id.*, ("[t]he deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant"); *United States v. One Parcel of Property Located at 15 Black Ledge Dr., Marlborough, Conn.*, 897 F.2d 97, 100-01 (2d Cir. 1990) (requirement that information in warrant application be truthful does not mean that every fact must be correct, but rather that information must be appropriately accepted by affiant as true); *United States v. Markey*, 131 F. Supp. 2d 316, 324 (D. Conn. 2001) ("*Franks* is implicated only when the false statement is made by, or the reckless disregard is that of, the affiant.  There is no right to a hearing when the challenge is to information provided by an informant or other source.").

In this matter, Carter has adduced no evidence to suggest that at the time Simpson submitted his initial affidavit, he was aware that any of the information provided by CI-2 was false or was made with reckless disregard for the truth.  *See United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989) ("*Franks* does not require that all statements in an affidavit be true; it simply requires that the statements be 'believed or appropriately accepted by the affiant as true'") (quoting *Franks v. Delaware*, 438 U.S. at 165), *cert. denied*, 498 U.S. 866 (1990).  Indeed, Carter has not claimed, let alone established, that any of CI-2's information was in fact inaccurate.  Rather, Carter argues that a *Franks* hearing is warranted based upon Simpson's failure to indicate in his original affidavit that CI-2 had fled the jurisdiction.

Following oral argument on Carter's motions, the government submitted an affidavit by Officer Simpson.  (Docket # 23).  In his affidavit, Simpson affirms that on the date he filed the original wiretap application, February 5, 2004, CI-2 "was available to me for

purposes of the investigation."  (Docket # 23 at ¶ 3).  It was not until "some time after February 23, 2004," that Simpson learned that CI-2 had fled.  In the first affidavit filed after that date, which was sworn to on March 2, 2004, Simpson disclosed to Judge Connell that CI-2 was no longer available because he had fled the jurisdiction.  (Docket # 19, Ex. B at ¶ 33).  Thus, such information was before Judge Connell when he granted the government's March 2, 2004 application (for authorization to intercept conversations over another cellular telephone believed to be utilized by Carter) – the first application, report or submission to the court since the time that Simpson learned of CI-2's flight.[2]

Judged on this record, Carter has not satisfied his burden of demonstrating a substantial preliminary showing that Simpson's affidavit contained false statements made knowingly or with reckless disregard for the truth.  *See Franks*, 438 U.S. at 171-72. Accordingly, Carter's motion for a *Franks* hearing is denied.


## REPORT & RECOMMENDATION

Carter also moves to suppress evidence obtained pursuant to the government's wiretaps on three grounds.  First, Carter asserts that the government failed to exhaust other investigative techniques before resorting to the interception of his telephone communications. Second, Carter contends that the government failed to provide him with proper notice of the intercepted communications following the termination of the wiretaps.  Finally, Carter claims that certain calls were intercepted outside the scope of the wiretap orders.  (Docket # 17).

---

[2]  I reject Carter's contention that the government was legally required to reallege that fact to Judge Connell in each subsequent submission following the March 2, 2004 affidavit.

A. **Exhaustion of Normal Investigative Techniques:**  In his first challenge, Carter seeks suppression of the intercepted communications on the grounds that Simpson's affidavit failed to demonstrate that before resorting to the wiretaps, traditional investigative procedures had been attempted and had proved unsuccessful.  Specifically, Carter argues that law enforcement had been successful in obtaining evidence through traditional means, such as the use of confidential informants.  Thus, according to Carter, Simpson's affidavit failed to justify the need for the use of wiretaps.  (Docket # 17).

An application for wiretap authorization must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 518(1)(c).  A judge may approve a wiretap application only after determining that such a showing has been made.  18 U.S.C. § 518(3)(c).  The intent of 18 U.S.C. § 518(1)(c), however,

> is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, [it] only require[s] that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods.

*United States v. Torres*, 901 F.2d 205, 231 (2d Cir.) (internal quotations omitted), *cert. denied*, 498 U.S. 906 (1990).  *See also United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974) (18 U.S.C. § 518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime"); *United States v. Pacheco*, 489 F.2d 554, 565 (5th Cir.1974), *cert. denied*, 421 U.S. 909 (1975) (intent of 18 U.S.C. § 518(1)(c) is "not to foreclose electronic surveillance until every other imaginable

7

method of investigation has been unsuccessfully attempted, but simply to inform the issuing

judge of the difficulties involved in the use of conventional techniques"); *United States v. Valdez*,

1991 WL 41590 *2 (S.D.N.Y.) (the "other investigative procedures" requirement was not

intended to turn electronic surveillance "into a tool of last resort"), *aff'd*, 952 F.2d 394 (2d Cir.

1991).

        In narcotics conspiracy investigations, the requirement may be satisfied by

"describing how traditional investigative techniques had failed to provide more than a 'limited

picture' of . . . [the] narcotics organization."  *Valdez*, 1991 WL 41590 at *2 (quoting *Torres*, 901

F.2d at 232).  Moreover, wiretaps are particularly appropriate when "the telephone is routinely

relied on to conduct the criminal enterprise under investigation."  *United States v. Young*, 822

F.2d 1234, 1237 (2d Cir. 1987).

        This Court's review of the issuing court's determination is not *de novo*; rather, it

is the reviewing court's role "'to decide if the facts set forth in the application were minimally

adequate to support the determination that was made.'" *Torres*, 901 F.2d at 231 (quoting *United

States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960

(1977)); *see also United States v. Miranda*, 1993 WL 410507, *2-3 (S.D.N.Y. 1993) (issuing

court's determination concerning sufficiency of normal investigative techniques is entitled to

"substantial deference").  Applying this standard to the instant case, this Court finds that

Simpson's affidavit adequately identified the traditional investigative techniques that had been

used and explained why the use of other traditional techniques reasonably appeared unlikely to

succeed if used.

Simpson's affidavit informed the court that the goals of the investigation were to "identify, disable, and dismantle the distribution network," which included Carter and Meeks, as well as other cocaine distributors and wholesale suppliers.  (Simpson Aff. at ¶ 49).  Simpson described various traditional investigative techniques that either had been utilized and proved unsuccessful in furthering the goals of the investigation or had not been utilized because they were not likely to succeed.

For example, the affidavit alleged that although the government had successfully utilized various informants, including CI-1 and CI-2, to gain information about Meeks and Carter and to make controlled purchases from their organization, the informants could not assist in achieving the greater goals of the investigation, such as locating the source or storage areas of the cocaine, or the locations of other assets.  (Simpson Aff. at ¶ 53).[3]  In addition, Simpson affirmed that physical surveillance, although helpful to a point, did not reveal "all the locations, or necessarily the main location, where the narcotics were packaged or stored in Rochester." (Simpson Aff. at ¶54).  Moreover, according to Simpson, the targets of the investigation were utilizing counter-surveillance techniques – such as changing vehicles to avoid surveillance, driving erratically and using associates to conduct surveillance in an attempt to detect the presence of law enforcement agents – making it unusually difficult to monitor the targets through traditional methods of surveillance.  (Simpson Aff. at ¶¶ 55-59, 63-67).

---

[3]  Carter disputes this assertion, noting that Simpson's affidavit disclosed that the investigation had revealed that Meeks was Carter's source of narcotics.  (Docket # 17 at ¶ 28).  The goals of the investigation, however, included identifying the source of Meeks's cocaine, which Carter sold for him.  (Simpson Aff. at ¶¶ 49, 53).  In addition, Carter disputes the inadequacy of traditional investigative means, noting that Meeks trusted CI-2 sufficiently to request him to rent an SUV to drive to New York to pick-up a cocaine shipment for him.  (Docket # 17 at ¶ 29).  A closer reading of the allegations in the affidavit relating to the rental SUV show that Meeks intended to ride in the back seat with another male "as a female drove them to New York."  (Simpson Aff. at ¶ 29).  In other words, CI-2's role was to rent the van, not drive it.  In fact, the trip did not occur.  (Simpson Aff. at ¶ 30).

Simpson further affirmed that investigating agents had analyzed pen register and toll records, but that those analyses were insufficient to advance the goals of the investigation because they could not differentiate between innocent and incriminating telephone conversations, nor could they reveal the specifics of the narcotics network.  (Simpson Aff. at ¶ 73).  The use of search warrants was also unlikely to accomplish the investigative goals because all co-conspirators were unlikely to be present together at the time of any search, nor was it likely that Carter would retain all evidence of his narcotics trafficking network at his residence.  (Simpson Aff. at ¶ 74).

In sum, this Court finds that Simpson's affidavit sufficiently identified the traditional investigative techniques that had been utilized and adequately informed the issuing court of the reasons why other techniques were unlikely to achieve the aims of the investigation. Accordingly, Carter's motion to suppress the wiretap communications based upon the failure to demonstrate the futility of other investigative techniques should be denied.

**B.  <u>Failure to Provide Notice</u>:**  Carter also argues that evidence seized pursuant to the wiretaps must be suppressed because law enforcement failed to provide him with timely notice of the intercepted calls.  18 U.S.C. § 2518 requires notification within "a reasonable time but not later than ninety days" after termination of any eavesdropping warrant to any persons named in the warrant or to any party to an intercepted call whom the judge determines should receive notice.  18 U.S.C. § 2518(8)(d).  New York Criminal Procedure Law provides that notification should be made within the same period.  *See* N.Y. Crim. Pro. Law § 700.50(3).  *See United States v. Lilla*, 699 F.2d 99, 102 (2d Cir. 1983) ("[f]or practical purposes the federal and New York statutory requirements are the same"); *People v. McGrath*, 46 N.Y. 2d 12, 26 (1978)

(New York statute designed to harmonize state eavesdropping warrant requirements with federal requirements).  As the Second Circuit has articulated, however, "failure to give the proper notification will result in suppression of the wiretap evidence only where prejudice is shown." *United States v. Fury*, 554 F.2d 522, 528 (2d Cir. 1977), *cert. denied*, 436 U.S. 931 (1978).  It is the defendant's burden to demonstrate such prejudice.  *Id.* at 529 (citing *United States v. Donovan*, 429 U.S. 413, 439 n.26 (1977)).

In this matter, Carter acknowledges that the government attempted to provide him with notice of the wiretap by sending such notice to 1325 North Street, Apartment 4.  He argues, however, that given all the information available to the government revealing that he in fact lived at 107 Electric Avenue, the government acted negligently by not sending notice to that address. (Docket ## 17, 25).  The government explains that it provided notice to Carter at North Street, rather than Electric Avenue, because at the time that the search warrant was executed at the Electric Avenue apartment on April 27, 2004, the landlord for that apartment identified Carter as the lessee and stated that Carter had been "here" for a couple of months.  (Docket # 27 at 5, Ex. B).  Indeed, Simpson's affidavit in support of the original warrant stated, "surveillance during this investigation has shown that neither Daniel Carter nor Travaris Meeks reside[s] at these locations on a regular basis."  (Simpson Aff. at ¶ 61).

Even if this Court were to assume the inadequacy of the notice sent to 1325 North Street, Carter has not demonstrated prejudice.  *See United States v. Fury*, 554 F.2d at 529 ("While it is desirable for the prosecutors to meet the ninety-day notice requirement, we again hold that a failure strictly to obey the time limitation puts the burden on the defendant to show that he was prejudiced").  Indeed, according to the government, even if notice had been sent to

11

107 Electric Avenue, Carter likely would not have received it because he was in Atlanta, Georgia at the time. (*See* Docket # 27 at n.1). Morever, Carter was provided notice of the wiretaps upon his arrest on the federal complaint in this matter and has since received copies of all eavesdropping orders, applications and affidavits. (Docket # 19 at 9). *See id.* (finding that defendant had failed to demonstrate prejudice because he had been provided notice of intercepted communications well in advance of suppression hearing). On this record, I find that Carter has failed entirely to satisfy his burden of demonstrating prejudice for the allegedly inadequate notice.

I thus recommend that Carter's motion to suppress on this basis be denied.

C. **Calls Intercepted Prior to Wiretap:** In his final challenge, Carter contends that certain of the intercepted conversations were intercepted outside the scope of the wiretap warrants' authorization. Attached to Carter's motion papers are the transcripts of two conversations allegedly intercepted at times when court authorization was absent: the first is designated as call # 407 and dated January 22, 2004 (prior to the issuance of the initial wiretap order on February 5, 2004), and the second is designated as call # 229 and dated February 26, 2004 (which was three days after Officer Simpson affirmed interception of calls over that particular telephone line had ceased). (Docket # 17, Ex. A).

In its initial response, the government argues that the date of the transcription of call # 407 is likely incorrect and a possible typographical error. Following oral argument, the government submitted a clarifying affidavit of Officer Simpson (Docket # 23), which affirms that the interception of communications in this matter began no earlier than February 5, 2004, and terminated by April 28, 2004 (prior to the expiration of the final wiretap warrant). (*See* Docket

12

# 19, Ex. A-B).  He further states, "No interceptions of any phone lines occurred outside those dates." (Docket # 23 at ¶ 5).  With respect to the second challenged interception, call # 229, I find that court authorization had been granted to intercept calls over that line pursuant to an order entered by Judge Connell on February 18, 2004.  That authorization was still in place when the call was allegedly intercepted on February 26, 2004.

Based upon the record, I recommend that Carter's motion to suppress intercepted communications on the grounds that they were obtained outside the scope of the wiretap warrant authorizations be denied.

**D.  Suppression of Other Evidence**:  Because I find that the wiretap warrants were properly issued, I further recommend that Carter's motion to suppress evidence seized as the fruit of those warrants (such as evidence seized pursuant to the execution of a search warrant for 107 Electric Avenue) also be denied.


## CONCLUSION

For the foregoing reasons, Carter's motion for a *Franks* hearing **(Docket # 17)** is **DENIED**.  It is also my recommendation that Carter's motions to suppress evidence obtained pursuant to the government's wiretaps on the grounds that law enforcement failed to exhaust normal investigative means, failed to provide timely notice and intercepted telephone calls outside the scope of the wiretap warrants **(Docket # 17)** be **DENIED**.  Finally, it is my

recommendation that Carter's motion to suppress other evidence as fruit of an unlawful wiretap

(**Docket # 17**) be **DENIED**.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
                                        MARIAN W. PAYSON
                                        United States Magistrate Judge

Dated: Rochester, New York
             June  12 , 2006.

14

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[4]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.  *See*, *e.g.*, *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **<u>Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.</u>**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

      *s/Marian W. Payson*
      MARIAN W. PAYSON
      United States Magistrate Judge

Dated: Rochester, New York
     June  12  , 2006.

---

[4] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).