```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,
                                                    06-CR-6011T

              v.                                    DECISION
                                                    and ORDER
DANIEL CARTER,

                    Defendant.

_____
```

INTRODUCTION

Defendant Daniel Carter ("Carter") is charged in a single-count Indictment with conspiring to possess with intent to distribute a Schedule II controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Specifically, the Indictment alleges that in or about June 2003 and in or about April 2004, Carter knowingly, willfully and unlawfully conspired with others to possess with intent to distribute, and to distribute, five kilograms or more of a mixture and substance containing a detectable amount of cocaine.

On April 7, 2006, the defendant filed an omnibus motion seeking, inter alia, suppression of evidence obtained pursuant to a wiretap and suppression of physical evidence seized as the fruit of that wiretap.

By Order dated February 1, 2006, this case was referred to Magistrate Judge Marian W. Payson for report and recommendation on

1

pretrial motions. On June 12, 2006, Judge Payson issued a Decision and Order and Report and Recommendation recommending, inter alia, that the defendant's motions to suppress evidence obtained pursuant to a wiretap and to suppress physical evidence seized as the fruit of that wiretap be denied. See June 12, 2004 Decision and Order at p. 13-14.

In support of his motion objecting to Judge Payson's Decision and Order and Report and Recommendation which denied his motion to suppress evidence obtained pursuant to a wiretap, Carter argues that (1) the supporting affidavits used to obtain the wiretap orders failed to establish necessity for the issuance of an eavesdropping warrant; (2) the government failed to meet the notice requirement; and (3) the government failed to adequately explain phone calls that were intercepted outside the scope of the wiretap orders.

For the reasons set forth below, I affirm and adopt Judge Payson's Decision and Order and Report and Recommendation in its entirety, and deny the defendant's motions to suppress evidence obtained pursuant to a wiretap and to suppress physical evidence seized as the fruit of that wiretap.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1), after the filing of a Report and Recommendation, any party may serve and file written objections to such proposed finding and recommendation. After such

filing,

> [a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1).  A district court, however, may not reject the credibility findings of a Magistrate Judge without conducting an evidentiary hearing in which the district court has the opportunity to observe and evaluate witness credibility in the first instance.  Cullen v. United States, 194 F.3d 401 (2nd Cir. 1999).

Objections to Orders of the Magistrate are governed by 28 U.S.C. § 636(b)(1)(A), which provides in relevant part that Orders relating to pretrial matters which are clearly erroneous or contrary to law may be reconsidered by a judge of the court.  28 U.S.C.A. § 636(b)(1)(A) (West 1993).  I apply these standard to the following analysis.

## BACKGROUND

The relevant facts of this case were set forth in Judge Payson's Report and Recommendation.  On February 2, 2004, Monroe County Court Judge John Connell issued an eavesdropping warrant authorizing the interception of telephone communications over cellular telephone number 585-202-9134, which was believed to be utilized by Carter.  The wiretap warrant was issued upon the affidavit of Rochester Police Officer David Simpson.  In that

affidavit, Simpson affirmed that since August 2003, he had been conducting an investigation into the narcotics trafficking activities of Carter and Travaris Meeks, the owner of Mad Flavors Clothing Store.

Among other evidence presented in his affidavit, Simpson described information and assistance that had been provided to the investigating agents by two confidential informants, identified as CI-1 and CI-2. According to Simpson, the informants had provided information relating to narcotics trafficking conducted by Meeks and Carter at Mad Flavors Clothing. CI-1's information generally pertained to Meeks, while CI-2's information pertained to both Meeks and Carter, who, according to CI-2, sold cocaine for Meeks as his "right had man." Simpson characterized both informants as reliable, setting forth the basis for his opinion, namely, that both had previously provided information to law enforcement agents that those agents had subsequently corroborated.

In addition, Simpson described three controlled purchases of cocaine made by CI-2 involving Carter. On one occasion, CI-2 contacted Carter over the target cellular telephone and arranged to purchase cocaine; later that day, as arranged, CI-2 purchased approximately 62 grams of cocaine directly from Carter. On another occasion, CI-2 made the purchase from an alleged associate of Meeks who, according to CI-2, placed telephone calls to Carter's cellular phone in the course of arranging the transaction. In the third

4

transaction, CI-2 purchased cocaine from another associate who was in the back of a vehicle owned by Carter's sister and which Carter had been observed operating on prior occasions.

Following the initial wiretap order, Simpson applied for and received authorization to intercept conversations over other cellular telephone numbers also believed to be utilized by Carter. Notably, on March 2, 2004, Simpson applied for a wiretap warrant for cellular telephone number 585-503-8023. In his supporting affidavit, Simpson revealed to the court that CI-2 was "no longer available for this investigation as he/she had violated his/her contract and fled the area."

Pursuant to the final wiretap order, the interception of communications ceased by April 28, 2004, and notice of the intercepted communications was mailed on June 18, 2004 to Carter at 1325 North Street, Apartment 4, Rochester, New York. The criminal complaint initiating this criminal prosecution was filed on October 17, 2005.

## DISCUSSION

Carter moves to suppress evidence obtained pursuant to the government's wiretaps on three grounds. First, Carter argues that the supporting affidavits used to obtain the wiretap orders failed to establish necessity for the issuance of an eavesdropping warrant. Second, Carter contends that the government failed to meet the notice requirement. Finally, Carter asserts that the

government failed to adequately explain phone calls that were intercepted outside the scope of the wiretap orders.

   I. <u>Necessity of Eavesdropping Warrant</u>

   Carter argues that it was not necessary for the government to issue an eavesdropping warrant because the wiretap affidavit from Simpson made it clear that the traditional investigative techniques that were already being used were successful.  As evidence, Carter noted that CI-2 was able to get close to Meeks, the main target of the investigation, and that Meeks even asked CI-2 to travel to New York to consummate a large drug deal on his behalf.

   The issuance of an eavesdropping warrant is not "a tool of last resort" <u>United States v. Valdez</u>, 1991 WL 41590 *2 (S.D.N.Y.), <u>aff'd</u>, 952 F.2d 394 (2d Cir. 1991).  Rather, an application for a wiretap authorization must identify what "other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous" 18 U.S.C. § 518(1)(c).  In narcotics conspiracy investigations, this requirement may be satisfied by "describing how traditional investigative techniques had failed to provide more than a 'limited picture' of ...[the] narcotics organization." <u>Valdez</u>, 1991 WL 41590 at *2 (quoting <u>United States v. Torres</u>, 901 F.2d 205 at 232 (2d Cir. 1990).

   Simpson's affidavit did adequately identify what traditional investigative techniques had been used and explain why the use of

6

other traditional investigative techniques reasonably appeared unlikely to succeed even if used. For example, Simpson's affidavit stated that the use of confidential informants had provided limited success. CI-1 and CI-2 had gained some information about Meeks and Carter, but could not assist in achieving the greater goals of the investigation, such as locating the source or storage areas of the cocaine, or the location of other assets. Physical surveillance was also helpful to a point, but could not reveal the locations of other drug storage facilities or prevail against Meeks' and Carter's use of counter-surveillance techniques. Analyzing pen register and toll records was not helpful because the investigators could not differentiate between innocent and incriminating phone conversations nor reveal the specifics of the narcotics network. Finally, the use of search warrants was unlikely to succeed because it was unlikely that all the co-conspirators would be present together at the time of the search and it was also unlikely that Carter would keep any narcotics trafficking evidence at his residence.

I find Carter's objections to be without merit. Simpson's affidavit satisfied the requirement for a wiretap authorization by sufficiently identifying the traditional investigative techniques that had been used and by adequately explaining the reasons why other traditional techniques were unlikely to succeed. Accordingly, I find that Judge Payson properly denied Carter's

motion to suppress the wiretap communications based upon the failure to demonstrate the futility of other investigative techniques.

II. <u>Notice Requirement</u>

Carter also argues that the government failed to provide him with timely notice of the intercepted telephone calls and therefore the evidence seized pursuant to the wiretaps should be suppressed. He contends that the government knew they were sending the notice to the wrong address but had no good reason for doing so. Carter also contends that suppression of evidence is required when a mandatory aspect of a state statute is not met.

18 U.S.C. § 2518(8)(d) requires notification within "a reasonable time but not later than ninety days" after termination of any eavesdropping warrant to any persons named in the warrant or to any party to an intercepted call whom the judge determines should receive notice. New York State statutory requirements are essentially the same. <u>See</u> N.Y. Crim. Pro. Law § 700.50(3). As the Second Circuit explained, however, "failure to give the proper notification will result in suppression of the wiretap evidence only where prejudice is shown." <u>United States v. Fury</u>, 554 F.2d 522, 528 (2d Cir. 1977), <u>cert. denied</u>, 436 U.S. 932 (1978).

Here, the government made a good faith attempt to notify Carter. Surveillance had revealed that Carter did not live at 107 Electric Avenue, the address listed in the information available to

the government. The landlord at 1325 North Street, however, reported that Carter lived in Apartment 4 and had been there for a couple of months. The government acted properly when it mailed the notice to North Street instead of Electric Avenue.

Furthermore, the government did not demonstrate prejudice because Carter was notified of the wiretapping upon his arrest and well in advance of his suppression hearing. Because the state did follow the mandatory aspect of the state and federal statutes and did not demonstrate prejudice, Judge Payson properly denied Carter's motion to suppress evidence based upon the failure to notify.

### III. Calls Intercepted Outside the Wiretap Orders

Finally Carter argues that there were calls intercepted outside the wiretap order. He contends that the government failed to explain why those calls exist and therefore those calls must be suppressed.

Two interceptions are in question. One is dated January 22, 2004, which is prior to the issuance of the initial wiretap order on February 5, 2004, and the other is dated February 26, 2004, which was three days after Simpson affirmed interception of the calls over that particular phone line had ceased.

The government submitted a clarifying affidavit from Simpson which stated that no interception of communication occurred before February 5, 2004. As for the second interception, court

authorization to intercept calls over that telephone line had been in place since February 18, 2004 and was still in effect when the call in question was intercepted on February 26, 2004. Therefore, it was proper for Judge Payson to deny Carter's motion to suppress intercepted communications on the grounds that they were obtained outside the scope of the wiretap.

    IV. <u>Suppression of Other Evidence</u>

Because the wiretap warrants were properly issued, it was appropriate for Judge Payson to deny Carter's motion to suppress evidence seized as the fruit of those warrants.

    ALL OF THE ABOVE IS SO ORDERED.

                                S/Michael A. Telesca
                          _____
                            MICHAEL A. TELESCA
                        United States District Judge

DATED:    Rochester, New York
            August 15, 2006